

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Lon A. Smith, Chairman
Railroad Commission of Texas
Austin, Texas

Dear Sir:

Opinion No. O-2375
Re: Meaning of the phrase "at least
one train each day" in Art. 6479,
R. C. S.

This is in answer to your request for our opinion
in regard to Article 6479, Vernon's Annotated Revised Civil
Statutes of Texas. Your letter reads in part as follows:

"Under date of January 17, 1931, the Honorable
James V. Allred, then Attorney General of Texas,
addressed an opinion to the Railroad Commission of
Texas with respect to the proper construction of
Subdivision 2 of Article 6479 of the Revised Civil
Statutes of 1925. The question propounded to him
at that time was substantially the following:

"The railroad schedule applicable on a cer-
tain portion or branch of a railroad provides for
only one passenger train northbound on one day and
only one passenger train southbound on the follow-
ing day, with no passenger service on Sunday, pro-
viding in effect three round trips over such por-
tion or branch during each week, but never more
than one train in one direction each week day.
Does such a service fulfill the minimum requirements,
as to passenger service, of Subdivision 2 of Article
6479?

"In the opinion above mentioned, the Attorney
General ruled 'that the words "at least one train
a day", as used in Subdivision 2 of Article 6479,
mean "one train a day each way."'

". . ., we have before us a schedule appli-
cable on a railroad branch line which provides for
northbound passenger service over the entire branch

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Hon. Lon A. Smith, Chairman, page 2

on Mondays, Wednesdays and Fridays, and southbound passenger service over the entire branch on Tuesdays, Thursdays and Saturdays; and which does not provide for any southbound passenger service on Mondays, Wednesdays and Fridays, or any northbound passenger service on Tuesdays, Thursdays and Saturdays.

"Your opinion is requested as to whether passenger service so provided is sufficient to meet the minimum requirements of article 6479 of the Revised Civil Statutes, as amended."

The statute involved in this question is Section 2 of Article 6479, which reads as follows:

"It shall be the duty of the Commission to see that upon each railroad in this State carrying passengers for hire there shall be run at least one train each day, Sundays excepted, upon which passengers shall be hauled; provided, however, the Commission may, in its discretion, upon application filed and after notice and hearing, relax such requirement as to any railroad, or part, portion or branch thereof, when in its opinion, public convenience permits of such relaxation, and shall relax such requirement when it appears upon such hearing that the running of one train each day, Sundays excepted, is not necessary in the rendition of adequate service to the public, or that on any railroad, or part, or portion or branch thereof, passenger service as frequent as one train each day, Sundays excepted, with the passenger traffic offered and reasonably to be expected, does not and will not pay the cost of such service plus a reasonable return upon the property employed in the rendition of such service; and Commission shall further regulate passenger train service so as to require the stoppage of such trains, for a time sufficient to receive and let off passengers, at such stations as may be designated by the Commission; and it may further prescribe the number of trains so operated each day which shall be required to stop at County seat stations; and if such railroad, or branch of same shall operate a gasoline or electric motor car over its line, carrying passengers for hire in this State, such motor car

Hon. Lon A. Smith, Chairman, page 3

shall be deemed a train within the meaning of
this Article and shall be subject to and includ-
ed within the provisions hereof." (Underscoring
ours)

The question we are asked to decide is whether the
phrase "at least one train each day" means only one train a
day one way or means one train a day each way.

In 1931, when Attorney General Allred's opinion
(by Assistant Elbert Hooper, January 17, 1931), to which you
refer, was written, the statute in question read as follows:

"It shall be the duty of the Commissioners
to see that, upon every Railroad branch of same,
carrying passengers for hire in this State, shall
be run at least one train a day, Sundays excepted,
upon which passengers shall be hauled, and the
Commissioners shall have no power to relax this
provision; provided, however, the Commission may,
in its discretion, relax such requirement as to
any railroad in this State less than fifty miles
in length and the gross annual passenger revenues
of which are less than $3600.00; and said Commis-
sion shall further regulate passenger train ser-
vice to stop for a time sufficient to receive and
let off passengers at such stations as may be
designated by the Commissioner; provided that
four trains each way, carrying passengers for
hire, if so many are run daily, Sundays excepted,
be required to stop as aforesaid at all county
seat stations; and if such railroad or branch of
same shall operate a gasoline or electric motor
car over its line carrying passengers for hire
in this State, such motor car shall be deemed a
train within the meaning of this Article and
shall be subject to and included within the re-
quirements that at least be run every day, Sun-
days excepted, and the requirement made by the
Commissioners as to stopping for a time suffi-
cient to receive and let off passengers at desig-
nated stations."

Attorney General Allred's opinion held that the words "at
least one train a day" meant one train a day each way; and
after citing several authorities on statutory construction,
the opinion contained language as follows:

Hon. Lon A. Smith, Chairman, page 4

"In view of these authorities, we may consider the whole subject of railroad legislation, being Title 112 of the R. C. S. 1925, and each of its parts, in determining what construction the Legislature intended should be placed on the words in question. A careful review of the Acts affecting railroads, including their preambles, reveals in brief, that the primary object of said legislation is to prevent discrimination and extortion in charges, to insure reasonable freight and passenger charges, and to require service adequate to meet the needs of passengers and freight. While the regulations must be reasonable, they are administered for the public's convenience and necessity above all other considerations."

"In this connection consider Article 6357, R.C.S., 1925, which provides that railroads

". . . shall start and run their cars for the transportation of passengers and property at regular times to be fixed by public notice, and shall furnish sufficient accommodation for the transportation of all such passengers and property, as shall, within a reasonable time previous thereto, offer, or be offered for transportation, at the place of starting and at junctions of other roads and at sidings and stopping places established for or receiving and discharging way passengers and freight and shall take, transport and discharge such passengers and property at, from and to such places, on the due payment of the tolls, freight or fare legally authorized therefor. Failure on the part of railroad companies to comply with the requirements of this Article shall be deemed an abuse of their rights and privileges and such abuse shall at once be corrected and regulated by the Railroad Commission. . . .

"Note that by its terms railroads are required to accommodate 'all such passengers and property' as shall offer themselves, or be offered, for transportation. If the construction your applicant places upon the words, 'one train a day' is adopted, the object and purpose of Article 6357 would be defeated. A railroad operating a train one way each day could not accommodate 'all such passengers and property' offered for transportation. Viewed from the standpoint of 'all such passengers and property',

Hon. Lon A. Smith, Chairman, page 5

a railroad operating on such a schedule would
be running a train only every other day, and in
violation of Article 6479, as well as Article
6357. Treating the two statutes prospectively
and giving effect to both, railroads are required
by their terms to operate a train a day each way
in order that all passengers and freight may be
accomodated. That these two Articles should be
construed together is supported by the case of
Railroad Commission of Texas, et al vs. Galveston,
H. & S. A. Ry. Co., 112 S. W. 345, 349."

We are frank to say that if the question were an
open one we might reach a different conclusion from that
stated in Attorney General Allred's opinion, but in view of
that opinion and what has transpired since it was written
we do not feel inclined to overrule it.

We are advised that the Railroad Commission of
Texas has followed that opinion, that it has been uniformly
acquiesced in by the railroad companies, and that it has
been considered the law by all persons concerned, continu-
ously since it has been written. In the case of Moorman v.
Terrell, Comptroller, 109 Tex. 173, 202 S. W. 727, the Su-
preme Court of Texas said:

"Again, sound public policy requires the
solving of mere doubts in favor of the construc-
tion put upon laws by the departments and offi-
cers charged with their administration, . . ."

It will be noticed that the statute in question
now reads differently, particularly in the last part of the
paragraph, from the way it read in 1931 when Attorney Gen-
eral Allred's opinion was written. The change was made in
1933 by Senate Bill 331, Ch. 111, 43rd Legislature. The
part we are concerned with was not changed except that the
words, "at least one train a day" were changed to "at least
one train each day", but we believe that change is immaterial.
The material changes were in the latter part of the paragraph
after the word "provided."

We come to this conclusion: When the Legislature
amended this statute in 1933 and did not materilly change
the part of the statute providing for at least one train a
day, which provision had been previously construed by the

Hon. Lon A. Smith, Chairman, page 6

Attorney General as meaning one train a day each way and enforced to that effect, we believe the Legislature intended for that construction to continue to be the law. In the case of Oden v. Gates, 119 Tex. 76, 24 S. W. (2d) 381, the Commission of Appeals said:

"It must be presumed that, when the Legislature passed the last-named statute, it knew the commissioner of the land office had interpreted article 5326 as not requiring the applicant for reinstatement to pay accrued interest to the date of reinstatement, but only that which was due under the terms of the contract which was being reinstated. If the Legislature, by the passage of article 5311b, contemplated a change from the method in force by the land office, it would no doubt have made plain its purpose to change the rule of construction then being applied. Not having done so, it must be presumed that the long-continued construction of that department was intended to be continued under the provisions of the later law."

In the case of McCallum v. Associated Retail Credit Men, 26 S. W. (2d) 715 (reversed on other grounds) the Court of Civil Appeals at Austin said:

"In the recent case of Oden v. Gates (Tex. Com. App.) 24 S. W. (2d) 381, it was held that it would be presumed, absent specific language in an act amending a doubtful statute which a department of the state government had construed in a certain manner for 25 years, to be the intention of the Legislature to continue the departmental construction of the statute."

It is our opinion, and you are so advised, that you should continue to follow Attorney General Allred's opinion to the effect that the phrase in Article 6479, R.C.S., saying "at least one train each day" means one train a day each way.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Cecil C. Rotsch
Assistant

APPROVED JUL 30, 1940

ATTORNEY GENERAL OF TEXAS

CCR:AMM

THIS OPINION CONSIDERED AND APPROVED IN LIMITED CONFERENCE